Good morning, Your Honors. William Taggart on behalf of Appellant Bradley Morrison. I hope I'm going to be real brief, but I never really know that. I have two points that I want to make in this brief argument. First of all. Always worries me when someone says I'll be very brief. I understand that, Your Honor. The word incurred in the phrase paid or incurred in 7430 must mean something different than paid. If Congress had intended to Well, it could simply mean you're going to have to pay, but you don't have to pay yet. And I think that You haven't paid it yet, but you are liable for the amount. I think that that is correct, and I think that that's why Mr. Morrison was correct in his position in this case, because he Let me ask you something. Is there any – there are assertions, particularly in the motion to reconsider, that there was an agreement that – that there were two agreements, essentially, that the – at the time that Mr. Morrison left the company, that there was an agreement that the company would advance his legal fees and that he would have to pay it back. And there was also an assertion, essentially, that there was an agreement among the four taxpayers that they would There is only in part, Your Honor, and you have to understand the way this case evolved. It started out at – as an audit, and I was representing the clients during the audit indirectly by advising the accountants. I was representing all four of the taxpayers as it evolved into this case. Before the statutory notices were issued, Mr. Morrison was brought out, although the tax dispute existed. I had ongoing relationships with all of the clients before in other But no retainer agreement. I represented them every day. I had no retainer agreement on anything because I represented all of them. It wasn't required. In the buyout, I had only peripheral involvement in the buyout. The question of the payment of the fees and the ongoing litigation with the Interim Revenue Service was a very small But you don't answer my question. What is – you say in part. Just get to that. Where is there anything in writing? The only written document that relates directly to the engagement is the Waiver of Conflicts Letter that was signed when the petitions – before the But that's nothing about who's going to pay anybody anything. No, because that was just a minor aspect of the buyout arrangement, and that was an agreement made between Nairman Tamorian and Is there a declaration that says that this is what happened? Yes, there are a number of declarations that say that that's – There's a declaration from you. What else is there? There are at least three declarations from me, and there are two declarations from Bradley Morrison and one declaration from Nairman Tamorian. But those were all put in at the reconsideration stage? I'm sorry? Those were put in at the reconsideration stage? The original declaration for the fees was put in with the motion. The issue – But it doesn't say anything about this. The issue of payment was something that wasn't raised until the opposition to the motion for fees was paid, and it came out of left field, very frankly, because I didn't think it was relevant to anything. And if you understand the tax court rules, even to reply to that, you have to file a motion to get permission to file a reply to the opposition for attorney's fees, and it was something that no one was prepared for, and I was surprised by the decision, which is why I moved for reconsideration, because I think it's clearly wrong.  So how would you like to see us interpret the term, income? That's a difficult question, because, as you know, there are insurance cases, and – Well, now's your chance. I'm asking you. I think that it should be interpreted that any time you have a liability,   there is an obligation, whether there's someone that is going to pay them and it's only a secondary obligation, or whether you pay for insurance premiums and then a third party steps in and pays it. I think that those are cases where you are indirectly incurring that liability. You may be paying for it in advance, and I think those should be recovered. The union cases or the case, I think it's the Crouse case, where the pension plan did a test case, basically, and paid all of the fees for someone. I think that that's a case where it shouldn't be incurred. They're not incurred by the taxpayer. They're incurred by a large organization that is simply running a test case, paying for one of its clients to litigate a particular issue. But any time there is a fundamental obligation to pay the litigation cost, even though there may be some other payor of it, I think that it is recovered, provided the – Well, would you also require that – I mean, there's an assertion here. Again, I don't know if there's a declaration that encompasses it. There was an obligation if they – that if Morrison got the money, they had to pay it back to Caspian. Now, suppose that obligation didn't exist. Suppose there was no such obligation. Would that matter? I don't think – I don't think that would matter at all. Mr. Morrison qualifies as a small taxpayer for purposes of the recovery of litigation. But then he would have gotten it twice, essentially. Suppose there was neither the supposed agreement as part of the buyout nor an obligation to repay. Suppose that he had paid the fees, presumably because it was the corporation he worked for. Then he would essentially be getting a recovery for something that he never paid for. In any sense. But he wouldn't really. He's just getting a little better deal on the buyout than he would have if he has to pay over the money. It was a future obligation. Well, I understand that. But suppose that wasn't – I'm just trying to get at what incurred means. Suppose that – I think incurred means that if there is an obligation to pay the litigation cost, whether it is primary or fundamental, the obligation exists. That's all that is required. If anybody is going to pay them. Excuse me? If anyone is going to pay them, it doesn't matter why. No. It has to be the taxpayer. Well, that's one thing I wondered about. This statute, unlike each, doesn't actually say that it has to be incurred by the taxpayer. It doesn't say that. Each, it does say it quite directly. But this statute says reasonable litigation costs are reasonable fees paid or incurred for the services. It doesn't say paid or incurred by the taxpayer. No, but I think it has been interpreted consistently that it is the taxpayer that has to incur them, which is one of the reasons specific language is added to allow for pro bono recoveries, where there was clearly no obligation to pay the cost for a pro bono clinic, took on the obligation to represent a taxpayer, and there was clearly no obligation to pay for it. Can I make one quick comment, because I see we're all used up a lot of time? I think the government, in its presentation, has misstated the standard that applies for review of litigation costs. I don't think it has anything to do with abuse of discretion. Kennedy. Is it your contention that the individual, Morrison, was obligated to repay the corporation or not? It is my contention, because that was the agreement between Bradley Morrison and Garamond DeMora. All right. Well, can you tell me in what declaration that appears? No, I can't. I think it's my declaration in the motion for reconsideration. But I'm not certain of that. If there was an obligation to repay, as you say, why would there be such an obligation if that was already negotiated for in the contract, you say, for the buyout? If there was already, in effect, payment to them as a part of the buyout, why then would there be an additional obligation to repay it? Because the buyout was completely negotiated between Garamond DeMora and Bradley Morrison before they realized this obligation existed. So they agreed, and there is no written agreement on it, they agreed that that's how they would handle it. All right. Can I ask one more question? Certainly. Assuming we agreed with you up until this point, how has the records that were introduced made it possible to figure out what fees were actually incurred for Morrison as opposed to for everybody? Well, yes, that was completely broken down in the original presentation because there was an allocation of all of the charges between, first of all, the four taxpayers, and then secondly, when the two were separated off, Caspian and Morrison's fees were simply treated as a single file and then divided between the two of them. The tax court never addressed that issue, though, correct? Excuse me? The tax court never addressed that issue. Never addressed in Morrison's case. So I guess your position would be that if we were to agree with you on the definition of incurred, we should remand the tax court to address that issue. I think that that is technically correct, although I would certainly like you to say that they're wrong. The tax court never decided on the substantial justification or anything else. No, it did not. I see I'm out of time. Thank you. May it please the Court. My name is Carol Barthel, and I represent the Commissioner in this appeal. I'd like first to address a couple of points that Judge Berzon brought up. The legislation does not explicitly say incurred by the taxpayer. It is, however, in the legislative history, which refers to expenses, costs, and fees actually incurred by the taxpayer. We cite that in our brief. And also, as Mr. Taggart remarks, the cases have universally said that the costs must be incurred. It's fairly striking that each says it specifically, and this statute does not. It does not say it specifically, but it has been universally. Okay, I'm sorry. I'm not hearing you. You need to speak up. It has been universally interpreted by the courts to mean incurred by the taxpayer. And it is in the legislative history, although not explicitly in the statute. The second point is as to whether the billing costs were broken down among the taxpayers. Not according to the what's in the record. In support for his motion for costs, Mr. Morrison introduced certain billing records, which appear in Appendix Pages 50 through 56. And all of these records identify the client as has been. What about the question of whether there is, in fact, there's no writing that represents either of the critical agreements. Are there declarations that represent that there were such agreements? No, Your Honor. What about the Temorian Declaration that's cited in the motion to reconsider? What the Temorian Declaration says is that in connection with Caspian's termination of Morrison's employment with Caspian and the purchase of Morrison's Caspian stock, Caspian agreed to advance on behalf of Morrison those costs that would be incurred for the benefit of Morrison with respect to the Commissioner's assertion of deficiencies. And in connection with this agreement, Morrison agreed to seek recovery of such costs from the Commissioner and to apply such recovery toward the repayment of any advances Caspian made on behalf of Morrison. That's it as far as what appears in the declarations. Isn't that enough? In connection with Caspian's termination, there is simply just ‑‑ it's very vague. It's ‑‑ What's vague about it? We have no papers. We don't see any ‑‑ we don't see anything from Morrison himself saying this. We only have this very vague and general explanation. The tax court did not actually reject this, though. It simply refused to consider it, essentially, on reconsideration. It was, as the tax court said, new and contradictory to what had been ‑‑ What was contradictory? I don't see anything contradictory at all, actually. In the motion for reconsideration ‑‑ in the motion for costs, in the reply, Morrison had said the agreement regarding Caspian's redemption of Morrison's stock did not expressly address the matter of litigation costs. But instead, all of the litigation costs in connection with all four cases have been paid by Caspian, pursuant to an engagement and disclosure agreement. So it's ‑‑ in the motion for costs, it says that this had nothing to do with it. It doesn't say that. It says it wasn't expressly addressed, which is essentially what the other person said as well. I really didn't see the contradiction. And I guess what I'm wondering is, where does that leave us with regard to the tax court? I mean, the tax court, on the other hand, also said he could have introduced this earlier, which he could have. He says he was blindsided and didn't realize it was going to be an issue. Your Honor, the taxpayer bears the burden of showing that he incurred these costs. And all that we have on the motion for costs is this statement saying it was in the terms of the joint disclosure agreement that Caspian agreed to pay all litigation costs incurred on behalf of the petitioners, not by, but on behalf of, in all four Caspian‑related cases, and that under the terms of the joint engagement and disclosure agreement, Caspian is entitled to ‑‑ Didn't he say in his motion that he incurred costs? He says that in his motion, but as court has repeatedly said, argument of counsel is not evidence. But in the motion, he said that he incurred costs, correct? The only evidence in support of that motion was the statement saying that Caspian was paying the costs and the billing statements that listed Caspian as the client. So he didn't ‑‑ he wasn't ‑‑ so the ‑‑ as I understand it, the tax court judge then said, well, he didn't actually incur any costs because he didn't pay them. He didn't pay them, nor did he call down upon himself any obligation to pay them. Well, they didn't say that, though. In the matter that you just read twice. I'm sorry? In the matter that you just twice read, it said that these would be advanced by the corporation and that he would repay them out of the money that he received, right? Simply repaying costs that you may receive later on does not mean that you have incurred an obligation. The cases are pretty clear that if, in fact, your repayment is dependent upon your   Excuse me. I'm sorry. No. No. Of course not. He couldn't say that. It said that he was, in effect, obligated to repay them. Was he not? No. It said that ‑‑ If he advanced and he was obligated to repay? It said out of any award that he might receive, which is not an obligation. It is simply if you get an award, you must pay them over to us or you agree to pay them over to us. But this is not ‑‑ this is not a debt. It is ‑‑ he has not called upon himself a legal obligation to pay anything. But as the facts developed, he did get an award, and so he'd have to repay it. He has not gotten an award. He was denied the award of the attorney's fees. Well, there was a total award, huh? He won in the tax court below, which meant that he did not have a deficiency, but he has not been awarded his costs in this case. Yes, yes. What's your position on how that term should be interpreted? What does it mean? I would go with the tax courts and the courts that have quoted the tax court in saying that ‑‑ Let me hear it again. ‑‑that he brought down upon himself a legal obligation to pay the costs. So you think the insurance cases and the union cases are wrong, I just thought. No, those are an exception. And our statute, in fact, makes the pro bono cases, for example, an exception. No, that's not pro bono. Those aren't pro bono. Those cases are ‑‑ this Court has compared the union cases to the pro bono cases and the EJIA cases. But in those cases, we don't have the basic problem of a litigant who is discouraged from bringing a meritorious case against the government by the possibility that he will end up winning by having to pay all those costs, which is the purpose of the fee shifting statute. Do we know what Caspian got in fees? I beg your pardon? Do we know in this record what Caspian got in fees? I'm sure Mr. Taggart knows, but I don't know. I would assume what they got was one half of the cost, the other half, i.e., Morrison was going for one half and Caspian was going for the other half. So basically the government is getting windfall out of this. Out of your position. The government is not getting windfall, Your Honor, because ‑‑ Well, why shouldn't Caspian then be able to recover all of it? Because Caspian is not the taxpayer in the Bradley Morrison case, Your Honor. And the statute is very clear. Your assumption is that they were not, in fact, incurring the other 50 percent. In other words, there's 100 percent here, right? The representation is that they agreed to split it 50‑50. I assume what happened is that Caspian got 50 percent. So the other 50 percent, nobody is going to get on your theory. Your Honor, this is a waiver of sovereign immunity, which is to be read strictly in favor of the government. And the taxpayer has simply not borne his burden of showing that he was ever under any obligation to pay the attorney's fees. Why wouldn't Caspian be entitled to the 100 percent on the theory that it was paying ‑‑ I mean, if it wasn't pro rata, then ‑‑ and you're relying on the fact that the billing was all to Caspian, then Caspian should get 100 percent. But I'm sure it didn't get that. Because Caspian is not the taxpayer in this case. No, I mean in its case, in Caspian's case. In Caspian's case, Caspian got the award to which Caspian, as the taxpayer in that case, was entitled. Which was what? 50 percent, I presume. That may well be the case. But it is not the taxpayer in the Bradley Morrison case. But on this set of facts, could they have gone for 100 percent? No, I don't believe so, Your Honor. I'm sorry? I don't believe so, Your Honor. Because Caspian is not the ‑‑ 50 percent just goes into the sky, essentially, even though the costs were actually paid by somebody. The record says that they were paid by Caspian. Caspian paid everybody's fees in all four cases. It agreed to do that. And if any of the four got an award of litigation costs, they would repay that award to Caspian. That is all that's in the record, Your Honor. I just want to make sure I understand the government's position here. That is, incurred means more than the taxpayer having paid.  The taxpayer could show that he incurred costs by showing that he actually paid the attorneys' fees. Yes, of course. Right? So that's one way. And I gather here your position would be a little bit different if there had been sort of a written agreement between Morrison and his lawyer where he promised to pay. That could have been put into evidence. Any bills that were sent by the lawyer. Would that show that he brought down upon himself an obligation to pay? Right. Okay. Now, you add in the fact that Caspian, as part of this buyout agreement, agrees to pay that amount of money for him. Now, is it your position then that he's no longer incurred any fees? That is correct, Your Honor. And under the ComServe case. I don't understand that at all. Under the ComServe case, Your Honor, we had a very similar factual situation where we had a severance agreement and the former employer agreed to pay through its insurance policy any costs in an ongoing SEC investigation. And, in fact, that's what happened. And the Eighth Circuit found that because the tax, not the taxpayer in that case, but the litigant in that case had not brought down on himself an obligation, he was always protected by the agreement by his former employer to pay those costs. He had not incurred those costs. So you essentially, as I understand it, have a dual position in this case. One is that the tax court was entitled to not take into account the declarations saying that there were these two agreements. And the second is that even if there were these two agreements, even if the facts were exactly as they're represented, still they don't get the money. That is correct, Your Honor. But the tax courts never decided the second. No, it didn't, Your Honor. So I don't see how the government can prevail on that. I mean, if they were entitled to have that set of facts considered, they were never considered. Well, they were not entitled to have that set of facts considered because, as the tax court correctly held, they did not show that this was information that they did not have before. Mr. Tamorian? No, I understand that. But I'm simply observing that if we thought otherwise about that, then I don't see how we can defer to your view of whether these two agreements would lead to a conclusion about incurring when the tax courts never decided it. We don't have to go that far because under what was presented simply on the motion for fees, and they replied to the opposition to the motion for fees. There was absolutely no basis to award Mr. Morris in this case. I understand that position. But I'm trying to figure out, would you agree with me that as to the second position, that we would have to remand to the tax court? If you thought that, in fact, under this, what is a largely hypothetical and argument-based scenario, that that might, I imagine that you might decide that. But I don't think that that would be correct, Your Honor. Because for procedural reasons, though. Procedural and also substantive, because I do not think that even under that somewhat elaborated set of suppositions, there would be an incurrence by the taxpayer of any obligation to pay these fees.  Thank you, Your Honor.  You had a minute or two for rebuttal. I want to go back. I answered the question you have, but I want to go back to the issue of the standard of review because I think I misstated it in my reply, at least, on the review of substantial justification. And that is, I think, first of all, it's not a discretionary award of attorneys' fees. It is a right to attorneys' fees if all of the conditions are met, subject to the overriding limitation that if the government is substantially justified in its position, that it still don't recover litigation costs. I think if the task force had made all of those decisions, whether it made them in favor of the government or in favor of the taxpayer, those would be reviewed de novo based on substantial evidence to support the decisions. Abuse of discretion has very little to do with it. It seems to me that in some ways we're coming down to a procedural question of whether the tax court was entitled to deny the motion to reconsider and how we deal, how we review a denial of a motion to reconsider under these circumstances. If I can, the way the motion for reconsideration was decided, I think was based entirely on Judge Vasquez's conclusion that no new evidence had been presented that he needed to consider and for that reason denied the motion to reconsider. But it actually said that, A, it was contradictory, B, it could have been presented before. That's the two things he said. It certainly could have been presented before. You have an explanation. I noticed in your memorandum you say you asked them why they were objecting and they wouldn't say so you didn't really know what target you were shooting at. Could you have filed a reply brief after they filed their opposition? I did, I believe, Your Honor. But you have to move the tax court in a very short period of time and then they give you 30 days to reply to it. And I had to scramble around and get the declarations. But I believe I did file a reply when I saw that they raised what was, in effect, a new issue. But you didn't put in the declarations that you put in later under reconsideration? No, because I thought it was so clearly wrong. I'm sorry? I thought it was so clearly wrong that they even raised the issue because that was a declaration from Eugene Chu, who was the appeals officer, and he misrepresented what was told to him in the first place, and that should have been confidential communication. It was settlement discussion. Do you have another question? All right. Thank you. The matter will be submitted. We appreciate your arguments.
judges: Hug, Paez, Berzon